IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| GENERAL MOTORS LLC,<br><br>                Plaintiff,<br><br>   vs.<br><br>WOODHOUSE AUTO FAMILY, INC., HUBER CHEVROLET, INC., HUBER CADILLAC, INC., YABA, LLC, and NBC PROPERTIES, LLC,<br><br>                Defendants. | **8:22CV157**<br><br>**MEMORANDUM AND ORDER** |

This matter is before the Court on the defendant Woodhouse Auto Family Inc.'s ("Woodhouse") motion to dismiss, Filing No. 25.[1] This is an action for declaratory relief pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure. Jurisdiction is based on 28 U.S.C. § 1332, diversity of citizenship.[2]

I.    FACTS

The plaintiff, General Motors, LLC ("GM") seeks an interpretation of the Nebraska Motor Vehicle Industry Regulation Act, Neb. Rev. Stat. § 60-1430, and a declaration that the defendants' alleged actions amount to tortious interference with a business expectancy under Nebraska law. Defendants Huber Cadillac, Inc., Yaba, LLC, and NBC Properties, LLC, (collectively, "Huber") have filed an answer to GM's complaint, a

---

[1] Huber adopts and incorporates by references the arguments set forth in GM's Brief in Opposition to Woodhouse's Motion to Dismiss Amended Complaint. *See* Filing No. 32.

[2] Plaintiff GM is alleged to be a Delaware limited liability company and Woodhouse, Huber and the other defendants are alleged to be Nebraska corporations or LLCs with their principal places of business in Nebraska.

counterclaim against GM and a crossclaim against Woodhouse, also seeking declaratory relief.

In its amended complaint, plaintiff General Motors, LLC ("GM") alleges that since 1976 and 1986, respectively, Huber has owned a Chevrolet motor vehicle dealership, and a Cadillac motor vehicle dealership in Omaha. Filing No. 6, First Amended Complaint at 2. Huber's current Chevrolet and Cadillac Dealer Sales and Service Agreements with GM contain a bargained-for right of first refusal ("ROFR") provision in the event that Huber seeks to sell or transfer its dealership and related assets. Filing No. 6-1, Ex. A, Chevrolet and Cadillac Dealer Sales and Service Agreements, § 12.3.1.

GM alleges that in November 2021, Woodhouse entered into asset and real estate purchase agreements with Huber whereby Huber agreed to sell to Woodhouse its assets and real property relating to its Chevrolet and Cadillac dealership. Filing No. 6, First Amended Complaint at 4. In the purchase agreement, Huber retained the right to unilaterally terminate the agreement if Huber was not satisfied that certain conditions would be satisfied prior to closing, including the condition that Woodhouse be approved for both Chevrolet and Cadillac franchise agreements. *Id.*

GM assigned the ROFR to H&H Automotive LLC ("H&H") and informed Huber of that fact in March 2022. *Id.* H&H then expressed its intention to exercise the ROFR and Huber informed Woodhouse via letter that because the ROFR had been exercised, Huber was terminating the purchase agreement. *Id.* Woodhouse wrote back to Huber (1) contending that rights of first refusal are invalid under the Nebraska Automobile Franchise Act, Neb. Rev. Stat. § 60-1430; and (2) requesting that Huber withdraw its notice of termination and proceed with the purchase agreement. *Id.* Woodhouse also wrote to GM

requesting that GM approve the purchase agreement, contending that rights of first refusal are invalid under the Act. *Id.* Woodhouse later wrote GM threatening to file an action against Huber for specific performance in Douglas County, Nebraska "in the event that [Woodhouse's] purchase transaction is not reinstated." *Id.* at 4–5; *see* Filing No. 6-2, Ex. B, Douglas County Complaint. Huber has not reinstated the purchase agreement. Filing No. 6, First Amended Complaint at 5. Likewise, GM has declined to waive its rights under the ROFR. *Id.*

GM alleges that the relief Woodhouse seeks in the threatened litigation necessarily requires GM to breach its dealer agreement and to waive its rights under the ROFR. *Id.* It alleges that by assigning the ROFR to H&H and indicating that H&H will be approved, GM has expressed its intention to give effect to a sale or transfer of Huber's dealership assets—under the same terms as those reflected in the purchase agreement." *Id.* It seeks declarations that (1) the Motor Vehicle Industry Regulation Act, Neb. Rev. Stat. § 60-1401 *et seq.*, does not prohibit GM or its assignees from exercising a right of first refusal over the sale or transfer of a motor vehicle dealership's assets, and (2) Woodhouse's attempts to prevent Huber from complying with the ROFR amount to tortious interference with GM's business expectation.

Huber has filed an answer to GM's complaint and asserted a counterclaim for declaratory relief against GM and a crossclaim for declaratory relief against Woodhouse. Filing No. 15, Answer. It seeks declarations (1) that Huber properly terminated the purchase agreement; (2) Huber has no obligation to withdraw its termination of the purchase agreement; (3) that Neb. Rev. Stat. § 60-1430 does not operate to invalidate Plaintiff's ROFR. *Id.* at 3.

3

Woodhouse moves to dismiss the amended complaint, counterclaim and crossclaim under Fed. R. Civ. P. 12(b)(6), arguing that GM and Huber fail to state any claims for relief. Filing No. 25, Motion to Dismiss. It contends the ROFRs on which GM's and Huber's claims rely are invalid as a matter of law under Neb. Rev. Stat. § 60-1430, and that GM and Huber cannot state a claim for tortious interference under Nebraska law because they fail to allege a business expectancy or any unjustified interference. *See* Filing No. 26, Woodhouse Brief at 4–8.

In response, GM and Huber argue that the ROFR is consistent with the statute. Filing No. 31, GM Brief; Filing No. 32, Huber Brief. They contend the exercise of the ROFR at issue is consistent with the statutory requirement that the franchiser give effect to the sale or transfer of dealership assets because the dealer can execute the contemplated change in the franchise under the same terms (except for the identity of the buyer). *See* Filing No. 31, GM brief at 2–3. They argue, in essence, that Neb. Rev. Stat. § 1430 requires GM give effect to "such *a* [sale or transfer of dealership assets]," but not to *the* transfer of dealership assets between Huber and Woodhouse. *See id.* at 3 (stating "[t]he Act does not, as Woodhouse argues, contemplate whether an automotive manufacturer gives effect to a sale to a specific buyer"). Huber also argues that its crossclaim and counterclaim should survive a motion to dismiss because "GM's ROFR is valid" and "there obviously was no way that GM was going to enter into franchise agreements with Woodhouse for the Chevrolet and Cadillac dealerships at issue." Filing No. 32, Huber Brief at 2.

II. LAW

A court considering a motion to dismiss must accept as true all well-pleaded facts in the complaint and draw all reasonable inferences from those facts in favor of the non-moving party. See *Farm Credit Servs. of Am., FLCA v. Haun*, 734 F.3d 800, 804 (8th Cir. 2013). However, a court need not credit legal conclusions, conclusory statements or "'naked assertion[s] devoid of further factual enhancement.'" *Retro Television Network, Inc. v. Luken Commc'ns, LLC*, 696 F.3d 766, 768 (8th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law." *Neitzke v. Williams*, 490 U.S. 319, 326 (1989). A court ruling on a motion to dismiss under Rule 12(b)(6) may consider documents or exhibits attached to a complaint, as well as matters of public and administrative record referenced in the complaint. See *Owen v. Gen. Motors Corp.*, 533 F.3d 913, 918 (8th Cir. 2008).

Statutory interpretation is a question of law. *Loves v. World Ins. Co.*, 758 N.W.2d 640, 643 (Neb. 2008). When there is not a case directly on point from the state's highest court, or if state law is ambiguous, a federal court must predict how the highest court of the state would rule if faced with the same issue. *Cotton v. Commodore Exp., Inc.*, 459 F.3d 862, 863 (8th Cir. 2006); see also *In re Popkin & Stern*, 340 F.3d 709, 717 (8th Cir. 2003) (stating that when there is no state supreme court case directly on point, the district court's role is to predict how the state supreme court would rule if faced with the issues before it).

The authority to regulate the franchise rights of automobile manufacturers and dealers in Nebraska is clearly within the power of the Legislature. *Chrysler Motors Corp.*

5

*v. Lee Janssen Motor Co.,* 534 N.W.2d 309, 316 (Neb. 1995). One purpose of such regulatory authority is to balance the inequality of power between automobile manufacturers and dealers. *Id.* at 316 (recognizing the disparity in bargaining power between automobile manufacturers and their dealers and noting that Congress and 25 states had enacted legislation to protect retail car dealers from perceived abusive and oppressive acts by the manufacturers); *see also In re Application of General Motors Corp.*, 439 N.W.2d 453, 456 (Neb. 1989) ("It is primarily the disparity in bargaining power between automobile manufactures and their dealers that prompted Congress, Nebraska, and at least 23 other states to enact legislation to protect retail car dealers from perceived abusive and oppressive acts by the manufacturers."). Under Neb. Rev. Stat. § 60-1430, "[n]otwithstanding the terms, provisions, or conditions of any agreement or franchise," . . . 'in the event of the sale or a contract for sale or transfer of ownership of the franchisee's dealership by sale or transfer of the business . . . the franchisor *shall give effect* to such a change in the franchise" unless either "the franchisee's license under the Motor Vehicle Industry Regulation Act is denied or the new owner is unable to obtain a license under the act or the proposed sale or transfer of the business or change of executive management will be substantially detrimental to the distribution of the franchisor's motor vehicles . . . or to competition in the community . . . .' Neb. Rev. Stat. Ann. § 60-1430 (emphasis added). Further, Neb. Rev. Stat. § 60-1429 provides that again "[n]otwithstanding the terms, provisions, or conditions of any agreement or franchise," good cause for the termination or noncontinuation of a franchise does not include

> The change of ownership of the franchisee's dealership or the change of executive management of the franchisee's dealership unless the franchisor, having the burden of proof, proves that such change of ownership or executive management will be substantially detrimental to the distribution

6

>of the franchisor's motor vehicles, combination motor vehicles and trailers, motorcycles, or trailer products or to competition in the community. Substantially detrimental may include, but is not limited to, the failure of any proposed transferee or individual to meet the current criteria generally applied by the franchisor in qualifying new motor vehicle dealers[.]

Neb. Rev. Stat. Ann. § 60-1429(2). "These sections create rights in franchisees which would not exist independent of the statute." S & T Motors v. Gen. Motors Corp., 203 Neb. 188, 192 (1979). Unless some condition of the statute has not been satisfied, a franchisor is bound to recognize and honor the sale of an automobile dealership. Id. (noting "a change of ownership of a franchisee's dealership is not good cause for termination of the franchise unless the franchisor proves that the change of ownership will be substantially detrimental to the distribution of franchisor's motor vehicle in the community" and "in the event of the sale or transfer of ownership of the franchisee's dealership by sale or transfer of the business, the franchisor shall give effect to such change in the franchise unless the transfer of the franchisee's license under the act is denied or the new owner is unable to obtain a license"); see also Kizzier Chevrolet Co., of Scottsbluff, Neb. v. Gen. Motors Corp., Oldsmobile Div., 705 F.2d 322, 326–28 (8th Cir. 1983) (finding that the Nebraska Motor Vehicle Licensing Act required GM to recognize a dealership transfer unless GM could demonstrate good cause for failing to do so); see also Bob Zimmerman Ford, Inc. v. Midwest Auto. I, L.L.C., 679 N.W.2d 606, 609–10 (Iowa 2004) (interpreting language identical to that at issue—that the franchiser "shall give effect to such a change in the franchise"— as invalidating the franchiser's right of first refusal).[3]

Under Nebraska law, statutory language is to be given its plain and ordinary meaning, and a court will not resort to interpretation to ascertain the meaning of statutory

---

[3] The Iowa legislature later amended its statutory language to expressly prohibit ROFRs in 2002. *Bob Zimmerman Ford, Inc.*, 679 N.W.2d at 609; I.C.A. § 322A.12

7

words which are plain, direct, and unambiguous. *A.W. by & through Doe v. Nebraska*, 865 F.3d 1014, 1018 (8th Cir. 2017). Moreover, under Nebraska law, it is not within the province of a court to read a meaning into a statute that is not warranted by the legislative language. See *id.* at 1019. As a general rule, in statutory interpretation, "shall" is "considered mandatory and inconsistent with the idea of discretion." *Prokop v. Lower Loup Nat. Res. Dist.*, 921 N.W.2d 375, 391 (Neb. 2019). Furthermore, the term "give effect to" means "to make valid, to carry out in practice, or to push to its results" or "to put into operation." Webster's online dictionary 1913, https://www.webster-dictionary.org/definition/To%20give%20effect; Merriam-Webster online dictionary, https://www.merriam-webster.com/dictionary/effect.

"Under Nebraska common law, the elements of a tortious interference claim are as follows: '(1) the existence of a valid business relationship or expectancy, (2) knowledge by the interferer of the relationship or expectancy, (3) an unjustified intentional act of interference on the part of the interferer, (4) proof that the interference caused the harm sustained, and (5) damage to the party whose relationship or expectancy was disrupted.'" *Davis v. Ricketts*, 765 F.3d 823, 829 (8th Cir. 2014) (quoting *Huff v. Swartz*, 258 Neb. 820, 606 N.W.2d 461, 466 (2000)); *see also Pro. Mgmt. Midwest, Inc. v. Lund Co.,* 826 N.W.2d 225, 235 (Neb. 2012). In determining whether action is "unjustified" for purposes of cause of action for tortious interference of business relationship or expectation, relevant factors include: nature of actor's conduct; actor's motive; interests of other with which actor's conduct interferes; interests sought to be advanced by actor; social interests in protecting freedom of action of actor and contractual interests of other; proximity or remoteness of actor's conduct to interference; and relations between parties. *Huff*, 606

N.W.2d at 468 (adopting the factors recited by the Restatement for determining whether interference is "improper").

III. DISCUSSION

The Court finds that, giving effect to all the language of the statute, Neb. Rev. Stat. § 60-1430 invalidates the ROFR in this action. The Court agrees with the Iowa Supreme Court that a literal interpretation of the challenged provision is entirely inconsistent with a recognition of a right of first refusal in the franchiser. See Bob Zimmerman Ford, Inc., 679 N.W.2d at 609. Like the Iowa Supreme Court, this Court is "not persuaded that the identity of the new franchisee is not a significant element of the transaction from the perspective of the selling franchisee." Id.

In interpreting language then identical to that at issue herein, the Iowa Supreme Court stated:

> The statutory language provides "the franchiser shall give effect to such a change in the franchise." In this context, "such" indicates "of the character, quality, or extent previously indicated or implied." Merriam–Webster's Collegiate Dictionary 1172 (10th ed. 2002). "Change" is a word meaning "transformation." Id. at 191. In the context of this statute, the words "such a change" manifestly refer to the specific franchise transfer that the parties have negotiated.
>
> Given the language used in the agreement, the crucial question becomes whether a franchiser's exercise of a right of first refusal constitutes a refusal to give effect to the sale or transfer of ownership. We are convinced that it does. It seems clear the right conferred by this statute was intended to be unfettered except as it has been limited by the statute. The only exceptions that the legislature has provided to the franchiser's obligation to "give effect" to the change are the inability of the new franchisee to obtain a license or a successful challenge to the franchise under section 322A.11. Neither of those circumstances exist in the present case.

Id. at 610. The Court finds that, if presented with the issue, the Nebraska Supreme Court would find that the language "that the franchiser shall give effect to such a change" means exactly what it says: that unless certain enumerated conditions exist, the franchiser must

9

recognize the transfer or sale. GM and Huber concede that the specified conditions (termination or absence of a license) do not exist. Inherent in the notion of a transfer or sale is an assumption that the transaction refers to a specific person or entity.

To adopt GM's interpretation would contravene the spirit and intent of the statute, which is to equalize bargaining power and protect dealers from abusive and oppressive acts by car manufacturers. Because Both GM's and Huber's claims rely on a valid ROFR, they cannot state a claim for relief.

Further, GM's and Huber's assertions of tortious interference fail to state a claim as well. Neither GM nor Huber have alleged either a valid business expectancy or an unjustified act of interference. GM and Huber had no right to rely on the ROFR to create an expectancy that a sale to H&H rather than Huber would be permissible under the statute. The ROFR does not give rise to a valid business expectancy. Also, the alleged intentional act of interference—threatening a lawsuit—was justified under the circumstances and does not form the basis for an intentional interference claim. The social interest in protecting dealers weighs in favor of that finding. Therefore, GM and Huber's claims against Woodhouse fail to state a claim as a matter of law and should be dismissed. The plaintiff's claims for declaratory relief and defendant Huber's counterclaim for declaratory relief against GM will be dismissed with prejudice. The Court declines to exercise supplemental jurisdiction over any remaining contract dispute issues involved in Huber's crossclaim against Woodhouse and the crossclaim will be dismissed without prejudice to reassertion in state court. See 28 U.S.C. § 1367(c)(3).[4] Accordingly,

---

[4] That stature provides that the "district courts may decline to exercise supplemental jurisdiction . . . if— . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3).

IT IS ORDERED:

1. Defendant Woodhouse's motion to dismiss (Filing No. 25) is granted.

2. A judgment of dismissal will be entered.

Dated this 14th day of February, 2023.

                                              BY THE COURT:

                                              s/ Joseph F. Bataillon
                                              Senior United States District Judge